**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1940-19

STATE OF NEW JERSEY,

    Plaintiff-Respondent/
    Cross-Appellant,

v.

ALAN A. ALDERMAN,

    Defendant-Appellant/
    Cross-Respondent.

_____

Submitted February 1, 2022 – Decided March 3, 2022

Before Judges Fisher and DeAlmeida.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Indictment No. 16-08-0133.

Joseph E. Krakora, Public Defender, attorney for appellant/cross-respondent (Michael Denny, Assistant Deputy Public Defender, of counsel and on the briefs).

Andrew J. Bruck, Acting Attorney General, attorney for respondent/cross-appellant (Sarah D. Brigham, Deputy Attorney General, of counsel and on the brief).

PER CURIAM

In this appeal, we consider, among other things, defendant's argument that the trial judge erred in denying his motion to suppress evidence seized from his hotel room. Defendant claims he did not give police consent to enter his hotel room, and he argues that, once inside, police unlawfully swept through the room, opening closets and spotting two duffel bags they suspected of containing illegal drugs. Even though police later sought and obtained a search warrant authorizing a further search of the room and the duffel bags, defendant contends that, without the information obtained from the earlier warrantless intrusions, police lacked probable cause for issuance of the warrant. We agree with defendant that the judge erred in failing to conduct an evidentiary hearing concerning the entry into and sweep of the hotel room, and we remand for that purpose. We otherwise reject defendant's argument that statements he gave police while they were in his hotel room should have been suppressed, and we reject the State's argument that the judge erred in awarding defendant certain jail credits.

Defendant and three others, two of whom pleaded guilty prior to trial, were charged with second-degree conspiracy to distribute controlled dangerous substances (CDS), N.J.S.A. 2C:35-5(a)(1). Defendant and his remaining co-defendant, Anthony Koon, were also charged with third-degree CDS possession, N.J.S.A. 2C:35-10(a)(1), and first-degree CDS possession with the intent to

distribute, N.J.S.A. 2C:35-5(a)(1); N.J.S.A. 2C:35-5(b)(1). Both defendant and Koon unsuccessfully moved to suppress both physical evidence seized from defendant's hotel room and statements they gave police. A jury trial resulted in Koon's conviction. The jury, however, couldn't reach a verdict on the charges against defendant and a mistrial was declared.

Koon then reached an agreement with the State for a reduced sentence in exchange for his testimony during defendant's retrial. The retrial resulted in defendant's acquittal of the distribution charge and his conviction of CDS possession and conspiracy charges. He was sentenced to a five-year prison term.

Defendant appeals, arguing:

> I. THE TRIAL COURT ERRED WHEN IT FOUND THAT THE ATTENUATION DOCTRINE EXCUSED THE WARRANTLESS SEARCH WITHOUT SPECIFYING WHAT ILLEGALITY WAS BEING ATTENUATED, AND WITHOUT CONDUCTING THE NECESSARY ANALYSIS.
>
> II. [DEFENDANT'S] STATEMENT TO THE POLICE SHOULD HAVE BEEN SUPPRESSED BECAUSE HE WAS IN CUSTODY WHEN, WITHOUT INFORMING HIM OF HIS RIGHTS, THEY QUESTIONED HIM ABOUT HIS ACTIVITIES AND PROPERTY.

As for defendant's first point, we conclude defendant was entitled to an evidentiary hearing for reasons that will shortly follow. We find insufficient

3

merit in defendant's second point to warrant further discussion in a written opinion, R. 2:11-3(e)(2), noting only that the judge conducted an evidentiary hearing and found from the testimony presented that defendant was not in custody when questioned in his hotel room and, so, was not entitled to be advised of the rights outlined in Miranda v. Arizona, 384 U.S. 436 (1966).

The State argues in its cross-appeal that the judge erred in granting defendant jail credit for time defendant spent on house arrest while in a halfway home. Even if defendant was not entitled to the jail credits – an issue we need not decide – the State's contention is no longer cognizable because defendant has already served his sentence. See State v. Schubert, 212 N.J. 295, 312-13 (2012).

We, thus, turn to what remains: defendant's arguments that the judge erred in denying the suppression of evidence seized from his hotel room and that the judge should have conducted an evidentiary hearing about the police officers' warrantless entry into and sweep of defendant's hotel room. We agree an evidentiary hearing was required to resolve critical factual disputes, and we remand for that hearing, the judge's findings of fact, and the judge's determination about whether – depending on the found facts – police had

sufficient evidence of probable cause when applying for a search warrant of defendant's hotel room.

To briefly summarize how and why police arrived at defendant's Secaucus hotel room, we gather from the affidavit submitted in support of a search warrant that New York law enforcement officers alerted the New Jersey State Police of their interest in a gold Mercedes which entered New Jersey and was located at the same Secaucus hotel where defendant was a guest. Officers located the Mercedes in the hotel parking lot next to an Odyssey with Pennsylvania license plates. Apparently recognizing they were being watched by police, both vehicles left the lot but were soon separately stopped. In questioning the Odyssey's occupants, officers detected a strong odor of air fresheners and noticed several cellphones, facts that caused police to suspect the occupants were involved in drug trafficking. The driver consented to a search but, even with a drug-sniffing dog, no contraband was found in the Odyssey.

One of the cellphones contained only three numbers. The phone received a text message the night before from a Nevada number containing the Secaucus hotel's address. Another text advised that the sender was going to Walmart to "get this done." This information prompted some officers to travel to a nearby Walmart and others to the hotel identified in the text message. Police conceded

5

at a later hearing that going to the hotel was "kind of a shot in the dark just to see if there was any relation" between anyone there and the suspects in the Mercedes and Odyssey.

At the hotel, officers were advised by the desk that someone from Nevada – Al Alderman – had checked into room 137. As officers approached that room, Koon was seen exiting from it. They asked Koon if he was Al; Koon said he was Tony and that Al was inside room 137. According to the search-warrant affidavit, as one officer asked Koon for identification, two other officers:

> knocked on the hotel room [137's] door and . . . [defendant] answered the door. [The officers] identified themselves as "State Police" and requested to speak with [defendant] in which [sic] he opened the door and allowed them to enter the hotel room.

Defendant apparently disputes that the officers asked for consent, claiming police entered without invitation.[1]

According to the search-warrant affidavit, once the officers were inside room 137, which actually consisted of multiple rooms, one officer "began to

---

[1] The State argues that defendant conceded he invited the officers in, but they base this on defense counsel's statements at a hearing that occurred six months after the judge denied the motion to suppress physical evidence taken from room 137. There was no such concession during the argument of the earlier suppression motion and, because no evidentiary hearing was conducted on their earlier motion, defendant had no opportunity to tell his side of the story at that more critical phase of the proceedings.

A-1940-19

clear the rooms and closets for any additional occupants for officer safety." Upon opening a closet door in the bedroom, the officer "observed two red gym type bags that were laying on the ground." Defendant was asked whether they were his and, according to the search-warrant affidavit, and without having been advised of the rights established in Miranda, defendant "denied any knowledge of the bags"; still not Mirandized, defendant acknowledged knowing Koon but by a different name.

The search-warrant affidavit went on to recount that police sought defendant's consent to search room 137 because of: conflicting statements he and Koon had made to police; the presence in the closet of the red-colored duffel bags; the phone number of one of the other suspects in Koon's phone; defendant's and Koon's "nervous demeanor[s]"; and Koon's prior arrest in Illinois for possession and conspiracy to distribute twenty kilograms of heroin.[2]

---

[2] A good portion of this information was obtained after entry into room 137 and, therefore, could not create a reason to seek entry into room 137. That is, what Koon said wasn't inconsistent with anything defendant said because police didn't talk to defendant until after they were in his room. The presence of the duffel bags in room 137 did not create a reason to enter room 137 because police didn't know about the duffel bags until after they entered and swept room 137. And defendant's alleged nervous demeanor wasn't a reason to enter room 137 because that too wasn't detected until after police entered the room.

7

Defendant refused to consent to the search. Officers then handcuffed defendant and took him to a police station while they applied for a search warrant.

The search-warrant affidavit also stated that a later review of hotel surveillance footage depicted defendant "entering the front door of the [hotel] pushing a cart containing several pieces of luggage and the two red colored gym type bags, similar to the bags located in the closet of the hotel room."

The motion judge denied defendant's suppression motion by applying the "attenuation doctrine" and by concluding this doctrine negated the need for any further factual inquiry about defendant's alleged consent to police entry or sweep of room 137. For that reason, no evidentiary hearing took place. We conclude the judge was wrong in both respects.

The attenuation doctrine precludes application of the exclusionary rule to an improper warrantless search if "the causal connection between the illegal conduct and the discovery of the challenged evidence was 'so attenuated' that the taint was dissipated." State v. Hunt, 91 N.J. 338, 349 (1982). Relying on and quoting from Brown v. Illinois, 422 U.S. 590, 602-04 (1975), our Supreme Court in State v. Shaw, 213 N.J. 398, 415 (2012), explained that application of this doctrine turns on three factors:

> (1) "the temporal proximity" between the illegal conduct and the challenged evidence; (2) "the presence

of intervening circumstances"; and (3) "particularly, the purpose and flagrancy of the official misconduct."

We assume from its argument that the State concedes the attenuation doctrine was mistakenly applied, and we agree. The attenuation doctrine cannot be applied here because – whether wrongful or not – the earlier police conduct was not attenuated from the later search authorized by the warrant.

To explain, we start by first recounting the multiple intrusions into defendant's privacy and living quarters.[3] First, there was the initial warrantless entry into room 137. Then there was the warrantless protective sweep of the room. And finally, a warrant-based search of room 137 and the duffel bags, which were found to contain illegal drugs.[4] We discern from the judge's oral decision that, in applying the attenuation doctrine, she believed the first two warrantless intrusions were attenuated from the third because that third intrusion was supported by an impartial judge's issuance of a search warrant. But this is

---

[3] Hotel guests have a reasonable expectation of privacy in their rooms akin to that possessed by property owners and tenants. Georgia v. Randolph, 547 U.S. 103, 112 (2006); State v. Shaw, 237 N.J. 588, 610 (2019).

[4] The duffel bags were found to contain thirty-one kilograms of heroin and numerous cellphones. The warrant also allowed officers to search Koon's Jeep, which was parked in the hotel parking lot, where they found $14,300 in cash wrapped in black electrical tape stuffed inside the engine compartment. Hotel receipts were found in the Chevrolet driven to the hotel by defendant.

not necessarily so because the warrant was obtained through the submission of an affidavit, which relied on what officers observed during the first two warrantless intrusions. In short, there was an inexorable link between the earlier warrantless intrusions and the later warrant-supported search, and no attenuation at all.

Recognizing the inapplicability of the attenuation doctrine, the State urges that we instead interpret the judge's decision as having been based on the independent-source doctrine. Even if we were to consider that doctrine though the judge never mentioned it, the State has not demonstrated there was an independent source for the search of room 137, the duffel bags, or defendant's and Koon's vehicles. Surely, the permission of the hotel proprietor in these circumstances would not have been sufficient even if it was sought (it wasn't) or urged as an independent source (it isn't). See Shaw, 237 N.J. at 610. And the search-warrant affidavit suggests no other source that provided probable cause to search the room, the duffel bags, or the vehicles. Even now, the State has not suggested the presence of some independent source. What the State argues, which we will turn to shortly, is that even if either or both of the first two intrusions were improper, there remained sufficient information – about the Mercedes, the Odyssey, their occupants and their cellphones, and what Koon

said in the hotel hallway shortly before police entered room 137 – in the search-warrant affidavit to support a finding of probable cause to search room 137, the duffel bags, and the vehicles.

As we have already observed, the judge did not conduct an evidentiary hearing, she did not consider or apply the independent-source doctrine on which the State now relies, she did not determine the legitimacy of the protective sweep (although, in ruling for the State, she assumed it was illegitimate[5]), and she did not resolve whether defendant consented to the officers' initial entry into his hotel room.[6] Therefore, we would have to enter a world of speculation to draw any conclusions about the legitimacy of the three intrusions into defendant's privacy.

---

[5] As for the sweep, the judge said she would not determine "whether the protective sweep was unjustifiable." Instead, she stated she was "going to rule . . . that because I haven't heard any testimony, and . . . I can understand law enforcement entering a hotel room and this whole narcotics investigation in conducting a protective sweep – sweep. So I don't want to make a – I'm not making a determination whether it was justifiable or not."

[6] At the conclusion of a later hearing concerning the admissibility of statements defendant made in his hotel room to police without having been Mirandized, the judge heard the testimony of officers and, as part of her findings, concluded that defendant consented to their entry. This finding, however, was made long after the motion to suppress evidence seized from the hotel room and the duffel bags, and the aim of that hearing did not specifically relate to the search now in question as to have a bearing on our disposition of this aspect of the appeal.

A-1940-19

We must, however, recognize that the search warrant of defendant's hotel room, the duffel bags, and Koon's and defendant's vehicles, chiefly rested on the observations made by the officers once they entered and swept defendant's hotel room. So, to determine the sufficiency of the warrant, the trial court must first determine the lawfulness of one or both of the first two intrusions,[7] and that can only be properly determined after the presentation of testimony on those issues at an evidentiary hearing.

In short, because there appears to be no other offered reason for the officers' entry into the hotel room on the first occasion other than defendant's consent – and that was the event that triggered the sweep and the information in the search-warrant affidavit that supported issuance of the warrant – an evidentiary hearing is required. If it is determined that defendant did not consent, then what the officers learned after entering could not be considered in determining whether there was probable cause for issuance of the search

---

[7] The approach is similar but not identical to what occurs at a Franks hearing, when a defendant alleges that statements contained in an affidavit in support of a search warrant are false and that the warrant would not have issued if the false information was excised. See Franks v. Delaware, 438 U.S. 154 (1978); see also State v. Robinson, 200 N.J. 1, 7 (2009). Defendant is not arguing here that portions of the search-warrant affidavit are false, only that the information was obtained through unlawful means and should not have been considered when issuing the warrant.

A-1940-19

warrant. Moreover, even if it is determined that defendant consented to the officers' entry into the room, it must still be determined whether the officers were justified in sweeping the room for their protection, a matter that should be examined in light of the principles contained in the Supreme Court's recent decision in State v. Radel, __ N.J. __ (2022). Once these factual determinations are made, the judge must then consider the validity of the search warrant by considering only those assertions in the affidavit that are not excluded from consideration based on the findings made after the evidentiary hearing.

* * *

To sum up, we vacate the order denying defendant's suppression motion and remand for an evidentiary hearing on the issues described above. Once findings are rendered about the two warrantless intrusions, and if any of those findings results in a determination that the police acted beyond lawful parameters, the trial judge should consider whether the State presented sufficient information to support issuance of the search warrant of room 137 and the duffel bags without considering the information obtained through any improper invasion of defendant's privacy rights.

To be clear, today's holding does not require a reversal of the judgment of conviction or a new trial. Instead, whether defendant is entitled to a new trial

13

depends on the outcome of the remand proceedings. See, e.g., State v. Herrera, 385 N.J. Super. 486, 500 (App. Div. 2006). If the trial judge's ruling on the remanded issues includes a determination that evidence admitted at trial should have been excluded, then the judge must vacate the judgment of conviction and grant defendant a new trial. But if the judge concludes evidence should not have been excluded, the judge should enter an order denying the suppression motion and the judgment of conviction would remain standing. Defendant would then have the right to appeal the new suppression order to this court.

The order denying defendant's motion to suppress evidence seized from his hotel room is vacated and the matter remanded for an evidentiary hearing and a disposition of the issues outlined in this opinion. We affirm the order denying defendant's motion to suppress statements he made to police in his hotel room. And we reject the State's argument in its cross-appeal because defendant has already served his sentence.

Affirmed in part, vacated in part, and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

14